UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
In re                                                                    Chapter 11

440 West 164th Street Housing Development Fund Corporation               Case no. 15-20003

                               Debtor.
--------------------------------------------------------------------------x

# PLAN OF REORGANIZATION

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Fascimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

440 West 164th Street Housing Development Fund Corporation ("Debtor"), proposes this Plan of Reorganization to its Creditors. UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1. "7A Administrator" shall mean Gloria Hopson.

2. "Abandoned Unit" shall mean a unit in the Property that reverts to the Debtor based upon the failure of a Class 5 shareholders to pay the amounts due or to exercise their other options

3. "Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

1. "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

2. "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

3. "Allowed Amount" shall mean the amount of a Claim: (a) if a Proof of Claim is filed timely or, with leave of the Court late filed which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed as disputed, unliquidated or contingent.

4. "Allowed Claim" shall mean a Claim: (a) if a Proof of Claim is filed timely or, with leave of the Court late filed which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed as disputed, unliquidated or contingent.

5. "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

6. "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

7. "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

8. "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.

9. "Bankruptcy Court" shall mean the Court as defined below.

10. "Bar Date" shall mean January 21, 2016, 2015.

11. "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

12. "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

13. "Claimant" shall mean the holder of a Claim.

14. "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

15. "Confirmation Hearing" shall mean the hearing under the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

16. "Confirmation Order" shall mean the order confirming the Plan.

17. "Court" shall mean the United States Bankruptcy Court for the SOUTHERN District of New York.

18. "Creditor" shall mean any entity that holds a Claim against the Debtor.

19. "Debtor" shall mean 440 West 164th Street Housing Development Fund Corporation.

20. "Disputed Claim" shall mean the whole or any portion of any claim against the Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

21. "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date after the Confirmation Date as may be practicable.

22. "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case under Section 541 of the Bankruptcy Code.

23. "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

24. "Final Order" shall mean an order that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

25. "Interest" shall mean an existing ownership interest in the Debtor.

26. "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

27. "Legal Rate" shall mean the applicable interest rate in 28 U.S.C. §1961 as of the Petition Date.

28. "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

29. "Loan Documents" shall mean the agreements between the Debtor and the Mortgagaee.

30. "Mortgage" shall mean the Mortgagee's mortgage on the Properties.

31. "Mortgagee" shall mean SAC492 071714.

32. "Petition Date" shall mean March 31, 2015.

33. "Plan" shall mean this Plan of Reorganization, and all modifications and/or amendments hereto.

34. "Property" shall mean 440 West 164th St., New York, New York.

35.     "Purchaser" shall mean an entity to be formed by the Mortgagee.

36.     "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

37.     "Secured Creditor" shall mean the owner or holder of a Secured Claim.

38.     "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against Debtor or the Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract under Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

39.     "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION AND TREATMENT

### Class 1

40.     **Classification** – New York City real estate tax and other municipal liens Claims total approximately $1,590,025

41.     **Treatment** -- Payment in full in Cash of Allowed Amount on the Effective Date, plus unpaid interest at the applicable statutory rate from the Petition Date through the payment date.

42.     **Voting** -- Unimpaired and deemed to have accepted the Plan.

## Class 2

43. **Classification** – SAC492 071714 Claim as asserted totals approximately $250,000 as of January 31, 2015, plus accrued and accruing interest.

44. **Treatment** – The Mortgagee shall be entitled to payment in full in Cash of the principal amount of $250,000 only. The Mortgagee shall be obligated to make a new $1,750,297 mortgage loan to the Debtor on the Effective Date bearing 7.5% interest plus monthly amortization payments on a 15 year schedule, for a five (5) year term. The Mortgagee shall be obligated on the Effective Date to purchase the shares and proprietary leases of units of owner-occupant shareholders who choose to sell, for (i) $40,000 cash payable by the Mortgagee to the owner-occupant shareholder on vacature of the subject unit, (ii) 3 months to vacate the unit rent-free and (iii) payment to the Debtor by the Mortgagee of such shareholder's back maintenance obligation. For each unit that reverts to the Debtor based upon the failure of a shareholder to either pay back maintenance or to sell its unit to the Mortgagee (the "Abandoned Units"), the Mortgagee or its designee shall be obligated to purchase the shares and propriety leases appurtenant to such units from the Debtor on the following terms: (i) $20,000 cash, and (ii) payment to the Debtor of such shareholder's back maintenance obligation.

45. **Voting** – Unimpaired and deemed to have accepted the Plan.

## Class 3

46. **Classification** – Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. Claims total approximately $20,482.

47.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus unpaid interest at the applicable statutory rate from the Petition Date through the payment date.

48.    **Voting --** Unimpaired and deemed to have accepted the Plan.

### Class 4

49.    **Classification** – General Unsecured Claims.  Claims total approximately $46,419

50.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus unpaid interest at the Legal Rate from the Petition Date through the payment date.

51.    **Voting** – Unimpaired and deemed to have accepted the Plan.

### Class 5

52.    **Classification** – Interest Holders.

53.    **Treatment** – Each shareholder shall be entitled to retain its interest in the Debtor under the Plan, provided that such shareholder brings current all overdue maintenance charges on or before 30 days after the Confirmation Order is entered.  Each Shareholder has the right to dispute the amount of overdue maintenance, but such shareholder shall be required to escrow the full amount the Debtor claims to be due with Debtor's counsel on or before 30 days after the Confirmation Order is entered.  An individual statement of the overdue maintenance the Debtor seeks will be sent separately to each shareholder.  The Debtor projects that post-confirmation maintenance will be almost triple existing maintenance as set forth on Exhibit A to the Plan.  Each Owner-occupant shareholder who chooses not to pay overdue maintenance and continue to own their apartment shall be entitled to sell their unit to the Mortgagee or its

designee for (i) $40,000 cash payable by the Mortgagee on delivery of the apartment, provided the apartment is delivered vacant and within 3 months of the Effective Date, (ii) 3 months to vacate the apartment rent-free and (iii) payment to the Debtor by the Mortgagee of such shareholder's back maintenance obligation.  Any shareholder who does not either bring current or escrow the amount of overdue maintenance on or before 30 days after the Confirmation Order, or sell their shares and lease to the Mortgagee, shall have the shares and proprietary lease appurtenant to their apartment canceled, and the ownership of such shares and the proprietary leases associated therewith shall revert to the Debtor.

54. **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## ADMINISTRATION CLAIMS

55. Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except if the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing obligations in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or under the terms and conditions of the particular transaction.  The Debtor anticipates there will be unpaid Administrative Expenses totaling approximately $75,000.  Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective Date.  United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtor.

## MEANS FOR IMPLEMENTATION

56. **Effective Date Obligations** – Effective Payments under the Plan total approximately $2,166,925 as follows: $1,590,025 for payment to the City of New York for its Class 1 Claims, $250,000 for payment to the Mortgage for its Class 2 claim, $20,482 for the payment to priority Class 3 Claims, $46,419, for payment to Class 4 general unsecured creditors, $75,000 for payment of Debtor's attorney fees, and $25,000 for other professionals. On the Effective Date, the Debtor also intends to create a $200,000 reserve fund. The Debtor anticipates that it will have $400,000 of cash on hand from the 7A Administrator on the Effective Date. In addition, the proceeds of collection of back maintenance and/or the sale of unit shares and proprietary leases is projected to total $416,628. The Debtor estimates a $1,750,297 shortfall between available cash and Effective Date obligations. That shortfall will be funded by a new $1,750,297 mortgage loan by the Mortgagee to the Debtor on the Effective Date bearing 7.5% interest plus amortization on a 15 year schedule, for a five (5) year term.

57. **Post-Confirmation Projections** – Post confirmation projections, including post-confirmation maintenance per apartment is set forth on Exhibit ___ hereto.

58. **Sale of Abandoned Units under the Plan**. As noted above, Effective Date payments shall be made in part from the sale of Abandoned Units. The shares and proprietary lease appurtenant to the unit of each Class 5 shareholder that does not bring its maintenance current ("Abandoned Unit") or sell its unit to the Mortgagee shall revert to the Debtor. The Debtor shall sell those shares and leases under the Plan to the Purchaser (the Mortgagee's designee) for (i) $20,000 cash, and (ii) payment to the Debtor of the former shareholder's back maintenance obligation.

59. The Purchaser of the Abandoned Units is an affiliate of the Mortgagee. The purchase prices for the Abandoned Units were determined based upon broker estimates of comparable sale prices for comparable units in the Debtor's area.

60. **Sale Approval** -- As part of the sale of the Abandoned Units under the Plan, and in order to ensure consummation of the Plan, the Confirmation Order shall contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the Debtor's sale, and the Purchaser's purchase, of the Abandoned Units pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Abandoned Units to the Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Purchaser, as transferee of the Abandoned Units, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Abandoned Units to the Purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the Purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are released, waived and discharged.

61. **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146, and the Supreme Court interpretation of the Bankruptcy Code § 1146(a), (i) the issuance, transfer or exchange of any securities, instruments or documents, (ii) the creation of any other Lien, mortgage, deed of trust or other security interest, (iii) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, the re-vesting, of

any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (iv) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan., shall not be subject to the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage tax, intangible tax or similar tax.  Consistent with the foregoing, exemption, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded, shall accept such instrument, without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage tax, intangible tax or similar tax.

  62. **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

  63. **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

64. **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and/or the Confirmation Order.

65. **7A Administrator** -- On the Effective Date, the 7A Administrator shall discontinue her duties and any and all interests and rights in all property held by, or entitled to be received by, the 7A Administrator shall be transferred to the Debtor after payment or reserve for all outstanding debts and obligations incurred by the 7A Administrator in the ordinary course of business.  No later than one month after the Effective Date, the 7A Administrator (a) shall provide the Debtor with a final accounting as to all sums collected by the 7A Administrator during the administration and the application thereof, and (b) seek approval thereof from the Bankruptcy Court.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

66. The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor has not yet completed its review of the Claims asserted in this case.  The Debtor reserves its right to file objections to Claims in the event grounds exist to object to particular Claims, for a period of 90 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined Claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined Claim if such claim was allowed in

full. To the extent that an undetermined Claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim. After all the amounts of all undetermined Claims have been fixed, the balance of the undetermined Claims distribution reserve shall thereafter be paid in accordance with the Plan. Under the Plan, the Debtor may, at any time, request that the Court estimate any contingent or unliquidated Claim pursuant to §502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Court shall retain jurisdiction to estimate any such contingent or unliquidated Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. All of the aforementioned claim objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted method.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

67.    All Executory Contracts not rejected prior to the Confirmation Date, shall be deemed assumed under the Plan. In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Unsecured Claims.

## **RETENTION OF JURISDICTION**

68. Retention of Jurisdiction. The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to, proceedings:

- To consider any modification of the Plan under section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157;

- To hear, determine and enforce all Claims and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets under the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtor.

- To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims.

## GENERAL PROVISIONS

69. **Headings**. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

70. **Disputed Claims**. The Debtor shall hold in escrow the distribution that would be due on account of any Disputed Claim. No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

71. **Calculation of Time Periods**. Bankruptcy Rule 9006 is incorporated to calculate the dates set forth herein.

72. **Other Actions**. Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

73. **Modification of Plan**. The Debtor may seek amendments or modifications to the Plan under section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND PROPERTY OF THE ESTATE

74. **Injunction**. The confirmation of this Plan shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act,

to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except under the Plan.

## CLOSING THE CASE

75. Upon substantial consummation, the Debtor may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated:   New York, New York
         March 17, 2016

        440 West 164th Street Housing Development Fund Corporation
        Debtor and Debtor in Possession

By:   s/ Mark Schwartz, as President

      BACKENROTH FRANKEL & KRINSKY, LLP
      Attorneys for Debtor

By:   s/Mark Frankel
      800 Third Avenue
      New York, New York 10022
      (212) 593-1100

# Exhibit A

440 WEST 164

| Apt | Bedrooms | Rent | Current maintenance | Percentage | New Proposed Maintenance |
|---|---|---|---|---|---|
| 1  | 2 |  | $552.00    | 4%   | $ 1,418.44  |
| 2  | 2 |  | $552.00    | 4%   | $ 1,418.44  |
| 3  | 4 |  | $828.00    | 6%   | $ 2,127.66  |
| 4  | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 21 | 2 |  | $552.00    | 4%   | $ 1,418.44  |
| 22 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 23 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 24 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 31 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 32 | 4 |  | $552.00    | 4%   | $ 1,418.44  |
| 33 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 34 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 41 | 2 |  | $552.00    | 4%   | $ 1,418.44  |
| 42 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 43 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 44 | 4 |  | $552.00    | 4%   | $ 1,418.44  |
| 51 | 2 |  | $552.00    | 4%   | $ 1,418.44  |
| 52 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 53 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
| 54 | 3 |  | $690.00    | 5%   | $ 1,773.05  |
|    |   |  | $12,972.00 | 100% | $ 400,000.00 |

| 440 W 164 St Bankruptcy Plan Projections | | | | | | | Assumptions | | |
|---|---|---|---|---|---|---|---|---|---|
| Address: | 440 W 164 St | | Residential Units: | | 20 | | | Sources and Uses | |
| | New York, NY | | Commercial Units: | | 0 | | Water | $ | 270,000.00 |
| | | | Total Units: | | 20 | | Taxes | $ | 1,215,000.00 |
| | | | | | | | Mortgage | $ | 270,000.00 |
| | Current | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Arears | $ | (284,867.71) |
| **Income:** | | | | | | | 7A Account | $ | (40,000.00) |
| Residential: | $ 155,664.00 | $ 400,000.00 | $ 400,000.00 | $ 400,000.00 | $ 400,000.00 | $ 400,000.00 | Legal / Admin | $ | 100,000.00 |
| Commercial: | $ - | $ - | $ - | $ - | $ - | $ - | Current Repairs | $ | 200,000.00 |
| Vacanct Projected | $ - | | | | | | | $ | 1,730,132.29 |
| Vacancy(4%) | $ (6,226.56) | $ (8,000.00) | $ (8,000.00) | $ (8,000.00) | $ (8,000.00) | $ (8,000.00) | | | |
| Tax Reimbursement Sign | $ - | $ - | $ - | $ - | $ - | $ - | | Loan with Principle and Interest | |
| Misc. Income: | $ - | $ - | $ - | $ - | $ - | $ - | | | |
| | | | | | | | Loan Amount: | $1,730,132.29 | Proposed Rate  7.50% |
| **EGI:** | $ 149,437.44 | $ 392,000.00 | $ 392,000.00 | $ 392,000.00 | $ 392,000.00 | $ 392,000.00 | Monthly Payment: | $16,038.54 | Amortization  15 |
| | | | | | | | Annual Debt Service: | $192,462.48 | |
| Expenses: | | | | | | | | | |
| Real Estate Taxes: | $ 22,012.00 | $ 22,012.00 | $ 21,351.64 | $ 20,711.09 | $ 20,089.76 | $ 19,487.07 | | | |
| Water & Sewer: | $ 22,164.00 | $ 22,496.46 | $ 22,833.91 | $ 23,176.42 | $ 23,524.06 | $ 23,876.92 | | | |
| Insurance: | $ 18,576.00 | $ 18,854.64 | $ 19,137.46 | $ 19,424.52 | $ 19,715.89 | $ 20,011.63 | | | |
| Fuel: | $ 17,000.00 | $ 17,255.00 | $ 17,513.83 | $ 17,776.53 | $ 18,043.18 | $ 18,313.83 | | | |
| Electric: | $ 4,000.00 | $ 4,060.00 | $ 4,120.90 | $ 4,182.71 | $ 4,245.45 | $ 4,309.14 | | | |
| Payroll: | $ 10,800.00 | $ 10,962.00 | $ 11,126.43 | $ 11,293.33 | $ 11,462.73 | $ 11,634.67 | | | |
| Repairs: | $ 15,566.40 | $ 15,799.90 | $ 16,036.89 | $ 16,277.45 | $ 16,521.61 | $ 16,769.43 | | | |
| G and A | $ 1,500.00 | $ 1,522.50 | $ 1,545.34 | $ 1,568.52 | $ 1,592.05 | $ 1,615.93 | | | |
| Professional: | $ 2,750.00 | $ 2,791.25 | $ 2,833.12 | $ 2,875.62 | $ 2,918.75 | $ 2,962.53 | | | |
| Reserves | $ 5,000.00 | $ 5,075.00 | $ 5,151.13 | $ 5,228.39 | $ 5,306.82 | $ 5,386.42 | | | |
| Management: | $ 7,471.87 | $ 7,583.95 | $ 7,697.71 | $ 7,813.17 | $ 7,930.37 | $ 8,049.33 | | | |
| **Total Expenses:** | $ 126,840.27 | $ 128,412.70 | $ 129,348.35 | $ 130,327.75 | $ 131,350.67 | $ 132,416.89 | | | |
| **NOI:** | $ 22,597.17 | $ 263,587.30 | $ 262,651.65 | $ 261,672.25 | $ 260,649.33 | $ 259,583.11 | | | |
| **Debt Service:** | $192,462.48 | $192,462.48 | $192,462.48 | $192,462.48 | $192,462.48 | $192,462.48 | | | |
| Unsecured Claims | | | | | | | | | |
| **NCF:** | -$169,865.31 | $71,124.82 | $70,189.17 | $69,209.77 | $68,186.85 | $67,120.63 | | | |