**ROBINSON BROG LEINWAND GREENE**      Return Date: July 15, 2016 at 10:00 am
  **GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
*A. Mitchell Greene*
*(212) 603-6300*
*Attorneys for SAC4902071714, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

In re:

**440 WEST 164TH STREET HOUSING
DEVELOPMENT FUND CORPORATION,**

                                 Debtor.
---------------------------------------------------------------------X

Chapter 11

Case No.: 15-20003-rdd

### SAC492 071714, LLC'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING IT TO PROVIDE A PROTECTIVE ADVANCE TO PAY OUTSTANDING TAXES AND WATER CHARGES

**SAC 492 071714, LLC** ("SAC"), a secured creditor and party in interest, by its attorneys, **Robinson Brog Leinwand Greene Genovese & Gluck P.C.** hereby submits this motion for the entry of an order authorizing it to provide a protective advance to pay New York City (the "City") for outstanding taxes and water charges and requiring the City to accept payment in full satisfaction of its claim (the "Motion"), and respectfully represents as follows:

#### Preliminary Statement

1.     SAC is the holder of a mortgage[1] against the Debtor's property in the amount of

---

[1] The Mortgage Consolidation, Extension and Modification Agreement, Assignment of Leases and Rents and Security Agreement, dated February 25, 2014, by and between 440 West 164th Street Housing Development Fund Corporation, as mortgagor, and Shanghai Holdings LLC, as mortgagee, is hereinafter referred to as the "Feb. 25th Consolidated Mortgage." The Feb 25th Consolidated Mortgage was subsequently assigned to SAC. Copies of (i) the Consolidated Mortgage dated July 29, 2014, (ii) the Mortgage dated July 29, 2014, (iii) the Assignment of Mortgage and (iv) the Feb. 25th Consolidated Mortgage are attached as Exhibits A, B, C and D, respectively, to the declaration of David Goldwasser ("Goldwassser Decl.").

{00800921.DOC;3 }630023

**$250,000.00** plus interest and attorneys' fees for the property located at **440 West 164th Street, New York, New York** (the "Property"). SAC's claim is not disputed by 440 West 164th Housing Development Fund Corporation (the "Debtor") in this case.

2. The background underlying the matters between the Debtor, the City and SAC are as set forth in the pleadings already on file with this Court, and are incorporated herein by reference. A brief summary is set forth below.

3. The Debtor is a housing cooperative corporation that owns the Property, which is a 20 unit apartment building.

4. Most of the apartment owners fell into arrears on their maintenance payments. As a result of the reduced income, there was insufficient funds to pay all expenses. The mortgage and real estate taxes were not paid.

5. The City foreclosed for nonpayment of taxes and gave notice that on April 1, 2015, the Property would be deeded to it.

6. Prior to that date, on March 31, 2015 (the "Petition Date"), the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

7. On or about March 17, 2016, the Debtor filed a plan and an accompanying disclosure statement. The plan asserts that the City's claims for real estate taxes and other municipal liens is approximately $1,590,025. [Dkt No. 57][2]

8. At about the same time, on March 21, 2016, the City filed a motion to dismiss the Debtor's bankruptcy case or in the alternative for stay relief to permit it to complete foreclosure of the Property (the "Dismissal Motion") [ Dkt. No. 62]. In the Dismissal Motion, the City asserted that the outstanding taxes were nearly $1.7 million. [Dkt. No. 62]. The Debtor objected

---

[2] The Debtor originally scheduled the City as having a secured claim in the amount of $1,207,600.69.

{00800921.DOC;3 }                                2

to the motion and SAC filed a joinder to the Debtor's objection.

9.  The outstanding taxes continue to accrue interest at the 18% per annum.

10. As a result of the Debtor's default in failing to pay taxes and other municipal charges and in order to protect and preserve creditors' claims, including SAC, and to allow the Debtor to be able to confirm its proposed plan, SAC proposes to pay a protective advance in the amount of the unpaid real estate taxes and other municipal charges that are determined to be due and owing (the "Protective Advance").

## Jurisdiction

11. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference Regarding Title 11* (S.D.N.Y. Feb 1, 2012) (Preska, C.J.). Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for relief sought herein is Section 105 of the Bankruptcy Code.

## Relief Requested

12. By this Motion, SAC seeks the entry of an order pursuant to section 105 of the Bankruptcy Code authorizing it to make a Protective Advance to pay the outstanding real estate taxes and other municipal charges and requiring the City to accept payment in full satisfaction of its claim. The Protective Advance will (i) be treated as a secured claim, (ii) accrue interest at the rate of 12 % per annum from the date said Protective Advance is made, and (iii) be payable (along with accrued interest) as part of a confirmed plan of reorganization in this bankruptcy case.

**Basis for Relief**

13.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14.     Pursuant to Bankruptcy Code section 105, this Court may authorize SAC, the holder to the Mortgage, to make a protective advance to pay the outstanding real estate taxes and other municipal charges pursuant to the terms of the Mortgage to protect the claims of the creditors, including SAC, and to allow the Debtor to confirm its plan.

15.     Under section 21 of the February 25th Consolidated Mortgage, the debt shall become immediately due and payable at the option of the mortgagee upon the happening of one or more enumerated events of default, including if any taxes or other charges are not paid when they are due and payable. See Goldwasser Decl., Exhibit D, ¶ 21. The Debtor is in default under the Mortgage, for among other things, failure to pay taxes.

16.     The Mortgage also provides for the right to cure defaults. Paragraph 23 of the Feb 25th Consolidated Mortgage provides in pertinent part as follows:

> Upon the occurrence of any Event of Default or if the Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, make or do the same in such a manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to …appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest at the Default Rate (as defined in the Note) for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee, shall constitute a portion of the Debt, shall be secured by this Mortgage and the other Loan Documents and shall be due and payable to Mortgagee upon demand.

See Goldwasser Decl., Exhibit D, ¶ 23.

17. Paragraph 23 provides SAC with the authorization to make the Protective Advance at the default rate of interest, which is defined in the restated mortgage promissory note (the "Note") as 24% per annum or the maximum rate permitted by law, whichever is less. Here, SAC is seeking interest at 12% per annum, which is the pre-default interest rate provided for in the Note.

18. Although the exact amount of the outstanding real estate taxes and other charges are to be determined, SAC believes that it is less than $ 2million. SAC is prepared to place $2 million in escrow pending a court determination or an agreement with the City as to the amount due and owing to the City, and then make the Protective Advance.

19. SAC has been in discussions with the Debtor regarding amending its plan to take into consideration the increased amount of the Protective Advance. The payment of the Protected Advance would be paid pursuant to an amended plan with payment terms to be agreed by the Debtor and SAC, which terms are expected to be substantially similar to the current proposed plan.

20. The Protective Advance benefits all parties. The City's secured claim is ahead of SAC and the unsecured creditors. It is entitled to be paid ahead of SAC and the other creditors. No creditors are harmed by the making of such Protective Advance. By making this advance and requiring the City to accept payment, the City gets paid in full, the Property remains in possession of the Debtor, and SAC's claims as well as the claims of the other creditors are preserved and not wiped out by the City's foreclosure of the Property

21. This Court should (i) authorize SAC to make the Protective Advance and require the City to accept payment in full satisfaction of its claim and (ii) not force the forfeiture of the

Debtor's Property, which would provide a windfall to the City to the detriment of the Debtor's estate and SAC.

**WHEREFORE,** it is respectfully requested that the Court grant the Motion and such further relief as is appropriate and just under the circumstances.

**Dated:**  New York, New York
July 8, 2016

> **ROBINSON BROG LEINWAND
>  GREENE GENOVESE & GLUCK P.C.**
>
> By: /s/ A. Mitchell Greene_____
>  **A. Mitchell Greene
>  Steven Eichel**
> 875 Third Ave, 9th Floor
> New York, New York 10022
> Tel. No.: 212-603-6300
> *Attorneys for SAC4902071714, LLC*